UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KYLE JAMES KING,

               Plaintiff,

v.                                                Case No. 24-cv-831-pp

STEVEN JOHNSON, *et al.*,

               Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) SCREENING COMPLAINT AND DISMISSING UNDER 28 U.S.C. §1915A FOR FAILURE TO STATE A CLAIM**

Plaintiff Kyle James King, who is incarcerated at the Drug Abuse Correctional Center and is representing himself, filed a complaint under 42 U.S.C. §1983,[1] alleging that the defendants violated his rights under federal and state law. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, screens his complaint, dkt. no. 1, and dismisses it for failure to state a claim.

I.    **Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the

---

[1] For reasons that are not clear, the plaintiff titled his pleading "AMENDED COMPLAINT." Dkt. No. 1 at 1.

plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On July 9, 2024, the court ordered the plaintiff to pay an initial partial filing fee of $3.98. Dkt. No. 6. The court received that fee on July 25, 2024. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The complaint names as defendants Warden Steven Johnson, Lieutenant Benjamin Zartner, classification specialist C. Riggs, Captain Bonlander, Security Chief Robert Millers, A. Schmidt, Sandra Deyoung, Emily Davidson, C. O'Donnel and Tony Evers. Dkt. No. 1 at 1. It alleges that the defendants work for Milwaukee Secure Detention Facility (MSDF), Dodge Correctional

3

Case 2:24-cv-00831-PP   Filed 08/21/24   Page 3 of 11   Document 11

Institution, the Department of Corrections (DOC) and/or the State of Wisconsin. Id.

The plaintiff alleges that on February 23, 2024, while he was incarcerated at MSDF, classification specialist Riggs told him that "he [would] be receiving 2 negative points and STG security threat group in the IFCC Instr[u]ment for Custody Classification for being identified as a gang member." Id. at 2. The plaintiff says that the IFCC is a new system that the DOC uses "to identify and assign custody levels based on a points system," with "1 through 9" being the lowest levels designating minimum security and "22 and higher" designating maximum security. Id. The plaintiff says that he told Riggs that he never has been in a gang, but that Riggs reiterated that "he's identified and assigned 2 negative points," which placed him in medium custody under the IFCC system. Id. Riggs refused to remove the points or the STG label, even though the plaintiff says that he had no "proof of gang affiliation." Id.

The plaintiff alleges that he contacted Lieutenant Zartner, who he says is the "gang coordinator" at MSDF. Id. He told Zartner that his STG label was incorrect and that he never has been in a gang. Id. The plaintiff claimed that the STG label "is slander and is affecting him negatively." Id. Zartner told the plaintiff that the DOC "received a correspondence from Milwaukee Police years ago saying that [the plaintiff] is affiliated with the Spannish [sic] Cobras or Maniak [sic] Latin Diciples [sic]." Id. at 3. Zartner said that he "can not [sic] remove the label, but he did say Captain Bonlander at DCI [Dodge] and or

security Chief Millers could remove the STG label." Id. Zartner told the plaintiff that if all that failed, he could "file an I.C.I." Id.

The plaintiff says he wrote to Bonlander asking him to remove the STG label, but that he did not receive a response. Id. He also wrote to security chief Millers and the secretary of the DOC. Id. He alleges that sometime in May 2024, Millers and Captain Stafferoni (not a defendant) talked to him at MSDF. Id. They allegedly told him that even if they removed the STG label, the plaintiff "would not have gotten to go to minimum." Id. Millers allegedly said that he "ha[d] enough to stand on in court" and did not acknowledge that the plaintiff's STG label was false. Id.

The plaintiff then wrote to Governor Evers to explain "the blatant slander and how the DOC fails to investigate and or correct the issue." Id. He says he previously had written to Evers, but that his letters were "referred" back to the DOC and not resolved. Id. The plaintiff alleges that he again "asked [E]vers to remove the STG label," but that his correspondence again was sent to Warden Johnson and Sandra Deyoung. Id. Johnson told the plaintiff that "law enforcement information identified [the plaintiff] and per policy gave DOC the right to label [him] a member." Id. at 4. The plaintiff says that he told each defendant that he had "no gang arrest, nor does he believe Milw. Police would send documents saying [the plaintiff] is affiliated when he is not." Id. Deyoung responded to the plaintiff's correspondence and told him that "once a person is labeled a gang member, it is perm[a]nent." Id. The plaintiff says that Deyoung "failed to look to see if documentation truly exist like all other employees did."

5

Id. The plaintiff claims that Evers "failed to have a non biassed [*sic*] party look into [his] complaints and or remove the defamatory STG Label." Id.

The plaintiff filed an institutional complaint asking that the STG label be removed. Id. He alleges that Schmidt dismissed his complaint, saying that it was beyond the scope of the institutional complaint process and telling the plaintiff that she could not investigate whether he was affiliated with a gang. Id. Warden Johnson affirmed the dismissal of the complaint, and Davidson and O'Donnel affirmed Johnson's dismissal. Id. He claims that the complaint examiner lied about not being able to investigate whether he is affiliated with a gang and deprived him of his right to due process. Id.

The plaintiff filed an open records request for information about his STG label, but he received a response saying that the records he requested "does not exist." Id. at 5. He asserts that this "affirms [his] assertion the employee's [*sic*] are continuing to slander his character by saying he is a gang member, which is falsified information with consequen[c]e." Id.

The plaintiff has sued the defendants for violating his right to due process and for defaming him in violation of state law. Id. He says he believes that his "Federal Due Process claim links directly to his Wisconsin state Law claim of Defamation of character causing injury, custody wise, because they are related." Id. He seeks removal of the STG label, which he says has kept him from being assigned to an Earned Release Program (ERP), and unspecified punitive damages. Id. at 5–6.

C. Analysis

The plaintiff's primary claim is that the defendants refused to remove what he says is a false STG (Security Threat Group) label from his custody classification, which places him in a higher custody classification and has kept him from being able to participate in the ERP. He claims that having the STG label on his record defames him because the classification is false. But as this court explained to the plaintiff in a previous order in another case, "defamation is a state-law claim—not a violation of the federal Constitution." Case No. 24-cv-284-pp, Dkt. No. 9 at 6 (citing Lynch v. Holder, Case No. 19-cv-1601-99, 2020 WL 998542, at *3 (E.D. Wis. Feb. 28, 2020); Edwards v. Strahota, Case No. 15-cv-845-pp, 2016 WL 614697, at *6 (E.D. Wis. Feb. 16, 2016); Smith v. City of Chicago, 992 F. Supp. 1027, 1030 (N.D. Ill. 1998); Davis v. City of Chicago, 53 F.3d 801, 804 (7th Cir. 1995)). The plaintiff cannot raise a claim of defamation in federal court unless it is so related to a federal claim that the two claims "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367(a).

The plaintiff asserts that his state-law defamation claim relates to his due process claim that the defendants improperly dismissed his institutional complaint without investigating whether the STG label should be in his file. But the complaint does not state a federal due process claim. "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of [an incarcerated person's] grievances by persons who

7

Case 2:24-cv-00831-PP   Filed 08/21/24   Page 7 of 11   Document 11

otherwise did not cause or participate in the underlying conduct states no claim." Owens v. Hinsley, 635 F.3d 950, 953 (7th Cir. 2011) (citations omitted).

The plaintiff alleges that Schmidt dismissed his institutional complaint, Warden Johnson affirmed that dismissal and Davidson and O'Donnel affirmed Johnson's decision on appeal. But he has not alleged that any of those people "caused or participated" in the conduct alleged in his institutional complaint (improperly labeling him as belonging to an STG). He alleges only that those defendants violated his right to due process by failing to investigate his complaint about the STG label. But just as the plaintiff does not have a due process right to a certain result from filing an institutional complaint, he does not have a "federal constitutional right to 'meaningful review of prisoner complaints,' including any investigation into the allegations in a grievance." Williams v. Tannan, Case No. 20-cv-1659-pp, 2024 WL 1071857, at *17 (E.D. Wis. Mar. 12, 2024) (quoting Steinke v. Dittmann, Case No. 17-cv-656, 2020 WL 470145, at *3 (E.D. Wis. Jan. 29, 2020), and citing Reimann v. Frank, 397 F. Supp. 2d 1059, 1081 (W.D. Wis. 2005); Geiger v. Jowers, 404 F.3d 371, 373 (5th Cir. 2005); Carlton v. Jondreau, 76 F. App'x 642, 644 (6th Cir. 2003)).

Even if the complaint did state a claim for relief, the court explained in the previous order in the plaintiff's other case that it has no authority to order the STG label removed from his record or to order a change in his custody classification level. Case No. 24-cv-284-pp, Dkt. No. 9 at 9. Decisions about an incarcerated person's custody classification are within the authority of the

DOC's Bureau of Offender Classification and Movement. See Wis. Admin. Code Ch. DOC 302.

The complaint fails to state a federal claim. Because the complaint does not state a federal claim, the court will not exercise supplemental jurisdiction over any putative claims arising under state law and will dismiss those claims without prejudice. See 28 U.S.C. §1367(c)(3). Although district courts generally permit civil plaintiffs at least one opportunity to amend their pleadings, the court need not do so "when 'it is *certain*' that amendment would be futile." See Fields v. Miller, Case No. 21-1419, 2022 WL 1011666, at *3 (7th Cir. Apr. 5, 2022) (citing Runnion *ex rel.* Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 519–20 (7th Cir. 2015)). Additional facts would not alter the court's conclusion that the plaintiff has no federal right to meaningful review of his institutional complaint, including an investigation of his allegations. The court finds it certain that amendment would be futile and will not allow the plaintiff to amend his complaint.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim. The court will enter judgment accordingly.

The court **ORDERS** that the plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE** under 28 U.S.C. §1367(c)(3).

The court will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$346.02** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Superintendent of the Drug Abuse Correctional Center where the plaintiff is confined.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **thirty days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Fed. R. App. P. 4(a)(5)(A). If the plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must

file a motion in *this court*. See Fed. R. App. P. 24(a)(1). The Court of Appeals may assess the plaintiff another "strike" if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **twenty-eight days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 21st day of August, 2024.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**

11
Case 2:24-cv-00831-PP    Filed 08/21/24    Page 11 of 11    Document 11